

NUMBER 13-24-00510-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

---

**DARRIN LEE MCKENZIE,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

---

ON APPEAL FROM THE 443RD DISTRICT COURT
OF ELLIS COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

A jury found appellant Darrin Lee McKenzie guilty of three counts of indecency with a child by sexual contact, a second-degree felony. *See* TEX. PENAL CODE ANN.

§ 21.11(a), (d). By one issue, appellant argues the evidence is insufficient to support his convictions. We affirm as modified.

## I.     BACKGROUND[1]

On June 5, 2024, appellant was indicted on one count of aggravated sexual assault of a child younger than fourteen (Count 1), a first-degree felony, and three counts of indecency with a child by sexual contact (Counts 2–4), a second-degree felony.[2] *Id.* §§ 21.11, 22.021. Specifically, Count 2 alleged that on or about July 24, 2019, appellant committed indecency with a child by touching the genitals of "Jane,"[3] Count 3 alleged that on or about June 1, 2019, appellant committed indecency with a child by touching the genitals of Jane, and Count 4 alleged that on or about August 1, 2019, appellant committed indecency with a child by touching the genitals of Jane.

The complainant, Jane, is appellant's daughter. At trial, Jane testified that she was born on June 29, 2010, and is fourteen years old. She stated that her mother and appellant are divorced. Jane admitted she was aware there were issues regarding visitation and child support between her parents. She testified that "growing up [appellant] wasn't in [her] life at all." Jane saw him "once or twice a year at most" and "[i]t made [her] feel unwanted."

In October 2017, Jane was seven years old when her paternal grandmother died. Her mother suggested that she spend some time with appellant in Dallas, Texas. Jane

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] Appellant was found not guilty by a jury for aggravated sexual assault of a child younger than fourteen. *See* TEX. PENAL CODE ANN. § 22.021.

[3] To protect the identity of the complainant, who was a minor at the time the crimes occurred, we refer to her by a pseudonym. *See* TEX. R. APP. P. 9.8 cmt.

testified that when they were in the car together, "he started rubbing on [her] thigh" over her clothes. She further testified that this made her feel uncomfortable because she thought appellant "should not have been touching a child like that." Jane stated that appellant made her sleep in the same bed with him when there were other bedrooms in her grandmother's home. She testified their bodies were "basically touching" on the bed and she felt "[d]isgusted." Appellant tried to assist her in getting undressed when she bathed. Jane told appellant that she did not require assistance, and he responded that "he was [her] father and he was supposed to help [her]." She described how appellant had a "smirk on his face" while watching her bathe. After her bath, "[appellant] asked [her] to rub lotion on his back." Jane testified that she told him "no." She further testified that appellant "got upset and he told [her] that he was [her] father and [she] was supposed to help him out with stuff like that." Jane admitted that she did not disclose to her mother what happened during her stay with appellant because she "wanted a relationship with [her] father and . . . didn't want him to get in trouble."

In 2019, appellant was residing with Jane and her mother in Red Oak, Texas. Jane testified she was "happy" at first to have appellant around because she was able to see him regularly. Then "chaos" happened because appellant would come home drunk and argue with her mother.

Jane recounted multiple instances wherein appellant made sexual contact with her when she was approximately nine years old. Among the incidents, Jane recounted that her mother left home to go to the hospital to see her nephew. Medical records admitted into evidence indicated that the nephew arrived at the hospital on July 24, 2019. Jane was left in the care of appellant. She was watching a movie in the living room and appellant sat next to her on the couch. Jane testified that she eventually sat on appellant's

3

lap and "[h]e started rubbing on [her inner thigh]." She stated that he "rub[bed] in a circular motion and . . . his arm went under [her] clothes." At first, appellant's hand was "staying on top of [her] underwear, and then it went under it" touching her "vagina." Jane testified that the abuse ended when she went to her room.

In a similar incident, Jane and appellant were watching "Black Panther" in the living room while her mother was in another room. She described how appellant was on the couch, and she "climbed up and laid on his chest." Jane testified that appellant started touching her "on top of [her] clothes" in her "vaginal area." She explained that appellant rubbed the vaginal area in a circular motion the "[s]ame way he did the last time."

Jane recalled another incident when appellant arrived drunk at their home and an argument ensued between her parents. She testified that her mother retreated to her bedroom and appellant proceeded up the stairs. Jane stated that "once he went upstairs, he called [her] name" with slurred speech. She further stated that appellant was "dirty" and "smelled like alcohol." Jane testified that she went up the stairs and observed appellant "laying on top of the couch" with a pack of beer. Appellant began speaking to her "calmly" and then he got "loud." Jane stated that appellant told her "he wished that he didn't have to be here, that he wishes he could take me somewhere else." Appellant "picked [her] up" and placed her on his lap. She testified that appellant's hands were initially on her waist and then they "went down to [her] vaginal area" over her "[u]nicorn" pajamas. Jane further testified that he touched her "[i]n the same way as he would usually do it, in a circular motion." She admitted that she did not disclose to her mother what appellant did out of fear for getting in trouble.

Lastly, Jane recounted an incident that occurred in her bedroom while she was watching "Peach Girl." Her parents had been arguing and appellant went into her

4

bedroom and "sat on the end of the bed" with her. Jane testified that appellant "scooted over and started to touch [her] on the outside of [her] clothes." She further testified that appellant was "rubbing [her] thighs and then that led into [her] vagina." Jane described "wearing [a] pink sequin outfit" that made her itch.

On cross-examination, Jane testified that law enforcement was dispatched to her home after an incident involving her parents and child protective services were notified. She sent a text message to appellant "that he almost put [her] in foster care" and "what he did was unforgiveable." Jane clarified that "verbal[] abus[e]" and "sexual abuse" is "unforgiveable." She was questioned on one of her TikTok posts and the following colloquy occurred:

| | |
|---|---|
| [Appellant's counsel]: | Okay, [Jane]. Have you ever said "behind every abusive girl[?]" |
| [Jane]: | Yes, sir. . . . |
| . . . . | |
| [Appellant's counsel]: | After that "behind every abusive girl" statement, did you next—did you say "there's a mom[?]" |
| [Jane]: | I stated that in the post. |
| [Appellant's counsel]: | Okay. And finally, did you say "who ran her daddy like a dog[?]" |
| [Jane]: | I stated that in the post. |
| . . . . | |
| [Appellant's counsel]: | So are you the abusive girl? |
| [Jane]: | In the trend, sure. Yes. |
| . . . . | |
| | As I stated before, it was a trend. I'm not suggesting [my mother is] abusive because |

5

|                      | she's never, that I know of, or even heard of, that she's ever put her hands on my father, unless it was for self-defense. |
|----------------------|---------------------------------------------------------------------------------------------------------------------------|
| [Appellant's counsel]: | Okay. And then what does "who ran a daddy like a dog" mean? |
| [Jane]:              | As I stated the past three times, it was a [TikTok] trend. |

Karol Wade Wright, a licensed professional counselor, testified that she was ordered in the child custody proceedings to provide counseling services to appellant and Jane for possible reunification. Wright stated that this occurs "when there has been a parent estranged from the child." She further stated that "reunification counseling" consists of "understand[ing] the concerns of the child, understand[ing] the relationship with the parent from the child's eyes, then prepar[ing] the parent, then put the two together so that [they] can move toward[s] . . . repairing the relationship." Wright testified that she met with Jane in February of 2022 and explained her role and purpose. Jane's demeanor changed when she was informed of possible visitations with appellant. Wright stated that it "depressed" Jane, "her facial display of emotions . . . flattened, which is something that children or nobody, really, can fake." Jane's "hands were shaking, and she started crying." She disclosed that there had been "inappropriate activity" with appellant. Wright opined that Jane may "ha[ve] experienced some sort of trauma" and suggested she meet with a personal counselor. Thereafter, she made a referral to child protective services.

Holly Scott, a former forensic interviewer with the Ellis County Children's Advocacy Center, was called to testify on behalf of the State. Scott explained the difference between an acute outcry statement and a delayed outcry statement. She stated that in her experience, most outcry statements are delayed. Scott also explained the difference

6

between a purposeful disclosure and accidental disclosure. She described a purposeful disclosure "where [a] child is more at a place of wanting to be able to talk or be ready to talk about . . . what's happened to them." An accidental disclosure "might be information that was revealed by chance." Scott testified that she interviewed Jane in April of 2022. Jane would get "emotional" and "scared" while detailing the sexual abuse. During Scott's testimony, the following colloquy occurred:

| [Prosecutor]: | Did [Jane] tell you about a time where abuse occurred when her mom went to go see her cousin in the hospital? |
| --- | --- |
| . . . . | |
| [Scott]: | She said that her mom ended up having to leave to take care of a relative with mental issues. She had asked if she could go stay with others. Instead, she stayed at the house. She was still around [eight] to [nine] years old. She said that one time she was sitting on the couch, and [appellant] was touching her inner thigh by her private area. She said he touched her on her skin, vagina area, under her pink shorts. She clarified that it was the side of her vagina. She said that he was rubbing and he would try to move to the top. She denied that it would go inside her vagina. She would say that it would happen most every time that she was left in a room with him. And then she said another time she was watching a movie, and something else happened after that. |
| [Prosecutor]: | . . . Can you tell me what she told you about the time when she was watching a movie? |
| [Scott]: | Yes. She said that she was watching a movie with [appellant]. She was wearing shorts. That time it felt that he was getting close to putting his fingers inside. She said that she was able to stop him before he actually was able to. She said that when she would stop him, he would walk off mad. |

7

Todd Woodruff, an investigator with the Ellis County District Attorney's Office, testified that he is a certified peace officer who assists in trial preparation, including interviewing witnesses. In November of 2022, he participated in a meeting with Jane where she outcried that appellant had sexually abused her. Jane informed him that when her mother was at the hospital, appellant "rubbed . . . on top of her shorts, then he rubbed her vagina under her clothes and touched the top area of her vagina." She further stated, "[his] finger went in a little bit." Woodruff testified that there was another incident when appellant was "drunk" and "[h]e rubbed her vagina in a circular motion . . . over the clothes."

The jury found appellant guilty of three counts of indecency with a child by sexual contact and sentenced him to seven and a half years' confinement as to each count. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and

8

independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The uncorroborated testimony of a child sexual abuse victim is sufficient to support a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (providing that courts give wide latitude to testimony provided by child victims of sexual abuse); *see also Benson v. State*, No. 13-18-00450-CR, 2020 WL 4812635, at *10 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, pet. ref'd) (mem. op., not designated for publication). The State has no burden to produce any corroborating or physical evidence. *Gutierrez v. State*, 585 S.W.3d 599, 607 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Walker*, 594 S.W.3d at 336.

A person commits indecency with a child by contact "if, with a child younger than 17 years of age," the person engages in sexual contact with the child. TEX. PENAL CODE

9

ANN. § 21.11(a). Sexual contact, includes touching a child, including through clothing, on any part of the child's genitals, if done with the intent to arouse or gratify the sexual desires of any person. *Id.* § 21.11(c)(1). "By its nature, a culpable mental state must generally be inferred from the circumstances." *Nisbett*, 552 S.W.3d at 267; *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) ("Proof of mental state will almost always depend upon circumstantial evidence.").

### III.      DISCUSSION

In his brief, appellant does not challenge any particular element of the offenses. Instead, it appears he calls into question the sufficiency of Jane's testimony as a whole. Jane testified to multiple incidents that constitute distinct acts of indecency with a child by sexual contact, as charged by the indictment. *See* TEX. PENAL CODE ANN. § 21.11. In particular, Jane identified instances where appellant would put his hand on her thighs and rub her "vagina" in a circular motion over her clothes, which made her uncomfortable. *See id.* § 21.11(c)(1) (including touching a child's genitals in the definition of sexual contact). Jane testified that she was nine years old when the sexual contact occurred. *See id.* § 21.11(a). The jury may have reasonably inferred from Jane's testimony and the circumstances that appellant rubbed Jane's vaginal area for the purpose of sexual arousal or gratification. *See Nisbett*, 552 S.W.3d at 267; *see Gonzalez Soto v. State*, 267 S.W.3d 327, 334 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) ("The jury could infer from the totality of appellant's conduct that touching A.R.'s breast and genital area was done with the intent to arouse and gratify his sexual desire."); *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.) (finding that the jury could infer intent from the way in which appellant touched complainant's "bottom" and that appellant's actions made complainant feel uncomfortable); *see also* TEX. PENAL CODE ANN. § 21.11.

10

Further, the jury, as the factfinder, was the exclusive judge of Jane's testimony and what weight to give it. *See Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a reasonable trier of fact could have found each essential element beyond a reasonable doubt for the indecency with a child convictions. *See Stahmann*, 602 S.W.3d at 577; TEX. PENAL CODE ANN. § 21.11. Appellant's sole issue is overruled.

### IV.    MODIFICATION OF JUDGMENT

Appellate courts may modify a trial court's judgment and affirm it as modified. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). This court may modify a judgment of the court below to make the record speak the truth if it has the necessary information to do so. *Carmona v. State*, 610 S.W.3d 611, 618 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Here, the judgment for Count 2 states that the sentence shall run consecutively. However, when the trial court pronounced the sentences, it is unclear whether the sentence for Count 2 was to run concurrent or consecutive. Instead, the trial court described Count 2 as the "base count," and the sentence for Count 3 to run consecutively and the sentence for Count 4 to run concurrently.[4] "[W]hen the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls." *Ette v. State*, 559 S.W.3d 511, 516 (Tex. Crim. App. 2018) (cleaned up). Accordingly, we modify the judgment for Count 2 by deleting "CONSECUTIVELY" under the heading "THIS SENTENCE SHALL RUN." *See id.*

---

[4] The trial court entered a judgment nunc pro tunc for Count 3 within two weeks of its original judgment. The judgment nunc pro tunc for Count 3 correctly states that the sentence is to run consecutively. The trial court's judgment for Count 4 correctly states the sentence is to run concurrently.

11

## V. CONCLUSION

We affirm the trial court's judgments as to Count 3 and Count 4. We modify the trial court's judgment as to Count 2 and affirm that judgment as modified.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
24th day of July, 2025.